IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID K., | ) |
|       Plaintiff, | ) |
| | ) No. 20-cv-1743 |
| v. | ) |
| | ) Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | ) |
|       Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

David K. ("Claimant") brings a motion to reverse the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits (DIBs). The Commissioner brings a motion for summary judgment seeking to uphold the decision to deny benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons below, Claimant's motion to reverse the decision of the Commissioner, (Dckt. #24), is granted and the Commissioner's motion for summary judgment, (Dckt. ##28), is denied.

**I.    BACKGROUND**

    **A.    Procedural History**

On January 6, 2017, Claimant (then fifty years old) filed an application for DIBs, alleging disability dating back to April 16, 2012. (Administrative Record ("R.") 15). His claim was denied initially and upon reconsideration. (*Id.*). Claimant filed a timely request for a hearing,

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

which was held on October 23, 2018, before Administrative Law Judge ("ALJ") Deborah Ellis. (R. 31-76). On March 11, 2019, the ALJ issued a written decision denying Claimant's application for benefits. (R. 12-30). Claimant filed a timely request for review with the Appeals Council. On January 7, 2020, the Appeals Council denied Claimant's request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (R. 1-6). This action followed.

### B. The Social Security Administration Standard to Recover Benefits

To qualify for disability benefits, a claimant must demonstrate that he is disabled, meaning he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that he has one or more physical or mental

impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month durational requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, he is considered disabled and no further analysis is required. If a listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), meaning his exertional and non-exertional capacity to work despite the limitations imposed by his impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id.* If he cannot undertake his past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given his RFC, age, education, and work experience. If such jobs exist, the individual is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

    **C.**    **The Evidence Presented to the ALJ**

Claimant seeks disability benefits based on a back injury, failed back surgery, pseudoarthrosis, osteochondrosis, degenerative disc disease, narrowing of spinal nerves, nerve pain, adjacent level degeneration, and depression. (R. 247). Because the Court's decision relates only to the ALJ's assessment of Claimant's mental limitations, it will limit its discussion of the evidence accordingly.

Lynette Schultz, Psy.D., conducted a consultative psychological evaluation of Claimant on April 11, 2017. (R. 673-78). Claimant informed Dr. Schultz that he had been diagnosed with depression and anxiety in 2013, was not participating in any mental health services, and is prescribed Diazepam for anxiety and Bupropion for depression. (R. 676). He reported feeling sad, hopeless, helpless, worthless, frustrated, irritable, overwhelmed, lethargic, apathetic, and experiencing anhedonia – symptoms that increase with stress. (*Id.*). Dr. Schultz found that Claimant's remote and immediate memory were intact, his judgment was adequate, his overall cognitive abilities were average, and his concentration was adequate. (R. 677). She diagnosed him with "Major Depressive Disorder, recurrent, moderate, with mild anxious distress." (*Id.*).

State agency consultant David Voss, Ph.D., reviewed Claimant's file on April 28, 2017. (R. 91). Relying on Dr. Ostrowski's assessment, he found that Claimant had: (1) mild limitations in his ability to understand, remember, or apply information; (2) mild limitations in interacting with others; (3) mild limitations in concentration, persistence, and pace; and (4) mild limitations in his ability to adapt or manage himself. (R. 90). State agency consultant Joseph Mehr, Ph.D., reviewed Claimant's file on September 8, 2017, and concurred with Dr. Voss's findings. (R. 111). Claimant did not testify regarding his mental impairments or any non-physical limitations.

### D. The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant did not engage in substantial gainful activity from his alleged onset date of April 16, 2012, through his date last insured of December 31, 2017. (R. 18). At step two, the ALJ determined that Claimant suffers from the severe impairment of degenerative disc disease, and the non-severe impairments of

hypertension, obesity, depression, and anxiety. (*Id.*). The ALJ also considered the four broad areas of mental functioning (the "paragraph B criteria") and found that Claimant has: (1) no limitation in understanding, remembering, or applying information; (2) no limitation in interacting with others; (3) mild limitations in concentration, persistence, and maintaining pace; and (4) mild limitations in adapting or managing himself. (R. 18-19). In reaching this conclusion, the ALJ gave "great weight" to the findings of state agency psychological consultants Drs. Voss and Mehr, although she did not explain her decision not to fully adopt their findings regarding Claimant's mild limitations in understanding, remembering, or applying information and interacting with others. (R. 19). The ALJ gave little weight to Dr. Schultz's consultative examination because "she gave no vocationally-relevant limitations." (R. 20).

At step three, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meet or medically equal one of the Commissioner's listed impairments. (*Id.*). Before turning to step four, the ALJ determined that Claimant has the residual functional capacity ("RFC") to perform light work with the following limitations:

> Frequently climbing ramps and stairs, and occasionally ladders, ropes, and scaffolding; can only frequently balance, kneel, crouch, and crawl, and occasionally stoop. The Claimant should avoid concentrated exposure to unprotected heights. The Claimant can frequently push and pull with the upper and lower extremities bilaterally.

(*Id.*). Based on these conclusions, the ALJ determined at step four that Claimant is not capable of performing his past work as a field service technician, an aircraft mechanic, or a mechanic. (R. 24). Even so, at step five, the ALJ concluded that a sufficient number of jobs exist in the national economy that Claimant can perform, including the representative jobs of cafeteria attendant, parking lot attendant, and office helper. (R. 25). As such, the ALJ found that Claimant was not disabled between his alleged onset date and his date last insured. (*Id.*).

5

## II. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and be free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

**III.     The ALJ erred by failing to account for the limitations resulting from Claimant's mental impairments when she determined Claimant's RFC.**

As stated above, the ALJ determined that Claimant's depression and anxiety were non-severe impairments that created "no more than minimal" limitations on his ability to perform work activities.  (R. 18).  In particular, she found that Claimant has a mild limitation in concentration, persistence, and maintaining pace, as well as a mild limitation in adapting or managing himself.  (R. 18-19).  Although the ALJ acknowledged that her step two analysis was "not a residual functional capacity assessment," and that the "mental residual functional capacity assessment . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B," (R. 20), she did not assess the limitations stemming from Claimant's mental impairments in the RFC assessment, nor did she account for them in her questions to the VE or the RFC itself.

Claimant argues that the ALJ erred by determining his RFC in this fashion.  (Dckt. #25 at 12).  Because this argument has merit, the Court finds that a remand to the Social Security Administration is warranted and it will not address Claimant's remaining arguments.  *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do not address DeCamp's other arguments.").  The Court's decision in this regard is not a comment on the merits of Claimant's other arguments and he is free to assert them on remand.

"The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014).  The task of assessing a claimant's RFC is reserved to the Commissioner.  *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995).  In this case, the Commissioner argues that once the ALJ found that Claimant "did not have a severe mental

7

impairment, it was unnecessary for the ALJ to revisit [Claimant's] concentration deficits, or lack thereof" in the RFC analysis. (Dckt. #29 at 5). The Seventh Circuit, however, has explicitly – and repeatedly – found otherwise.

"When determining a claimant's RFC, the ALJ must consider the combination of *all* limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and] [a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted) (emphasis added); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). Consequently, it is well-settled that the ALJ must incorporate all limitations arising from a claimant's mental impairments into his RFC, even if those mental impairments are non-severe and the limitations that they impose on the claimant's capabilities are minor. *See, e.g., DeCamp*, 916 F.3d at 675-76; *Yurt v. Colvin,* 758 F.3d 850, 857-59 (7th Cir. 2014); *John M. v. Kijakazi*, No. 19 cv 1595, 2022 WL 220384, *9-10 (N.D.Ill. Jan. 25, 2022); *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514, at *3-4 (N.D.Ill. Jan. 28, 2019); *President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053, at *3-4 (N.D.Ill. Sept. 7, 2018); *Hovi v. Colvin,* No. 12-C-169, 2013 WL 3989232, at *16 (W.D.Wis. Aug. 2, 2013) ("Courts in this circuit have consistently held that an ALJ's unexplained failure to include even mild limitations in concentration, persistence, and pace in the RFC warrants remand.") (citing cases).

Incorporating such limitations into the RFC is critical because even "mild limitations in social functioning or concentration, persistence, or pace may preclude the ability to perform . . . skilled and semi-skilled work." *Cheryl C.*, 2019 WL 339514, at *3; *Hovi*, 2013 WL 3989232, at *16. Furthermore, a claimant's difficulties with memory and concentration might impact or

preclude his ability to perform even unskilled work. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citing *Craft,* 539 F.3d at 677-78).

It is not enough that the ALJ concluded her step two analysis by noting that, "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (R. 20). "Courts in this circuit have found such language at the end of the step two analysis causes confusion." *Anthony W. v. Kijakazi*, 2022 WL 1062334 (N.D.Ill. Apr. 8, 2022) (citing cases). As one court explained:

> It is unclear what the ALJ meant by saying that the RFC "reflects" his Step 2 findings concerning [claimant]'s mental limitations. He could have intended this to mean that the RFC was designed to incorporate the mild impairments identified at Step 2, even though they were not specifically mentioned in the RFC. He could also have meant that he considered the Step 2 limitations as part of the RFC analysis but found them to be too mild to warrant additional non-exertional restrictions.

*Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D.Ill. Nov. 18, 2011). Similarly, here, the Court cannot discern what the ALJ meant by her statement that the RFC analysis reflects the degree of limitations that she found in her discussion of the paragraph B categories. It is clear, however, that the ALJ did not discuss the minimal non-exertional limitations that she found at step two in the RFC analysis. "While the Court generally reads the ALJ's decision as a whole, the ALJ here explicitly stated that the step two analysis did not constitute a mental RFC assessment. . . . [T]he Court will not overreach and ignore the ALJ's own words in an effort to read the opinion as a whole." *Anthony W.*, 2022 WL 1062334, at *3.

Accordingly, on remand the ALJ must either incorporate non-exertional restrictions into the RFC that account for Claimant's mild limitations in concentration, persistence, or pace, and adapting and managing himself, *or* explain why such limitations are unwarranted.

9

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse the Commissioner's decision to deny him DIBs, (Dckt. #24), is granted and the Commissioner's motion for summary judgment, (Dckt. #28), is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**ENTERED:** July 14, 2022

**Jeffrey I. Cummings**
**United States Magistrate Judge**